UNITED STATES of America,
Plaintiff,

v.

Patrick George GRIFFITH, Defendant.

No. 70 CR 26.

United States District Court,
N. D. Illinois, E. D.

March 5, 1971.

Ronald P. Alwin, Chicago, Ill., for defendant.

William J. Bauer, U. S. Atty., Chicago, Ill., for plaintiff.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

ROBSON, Chief Judge.

The defendant moves to dismiss this indictment brought for his admitted refusal to submit to induction into the armed forces. For the reasons stated below, this court is of the opinion the indictment should be dismissed.

The defendant has appended to his motion, as Exhibits 1 through 62, a certified copy of his Selective Service file. The relevant facts are not controverted by the Government. On July 12, 1963, the defendant registered with the Selective Service System. At that time, the defendant claimed exemption from military service as a conscientious objector by signing the following printed statement on his initial classification questionnaire:

> "SERIES VIII.—CONSCIENTIOUS OBJECTOR
> (DO NOT SIGN THIS SERIES UNLESS YOU CLAIM EXEMPTION AS A CONSCIENTIOUS OBJECTOR)
>
> "By reason of religious training and belief I am conscientiously opposed to participation in war in any form and hereby request that the local board furnish me a Special Form for Conscientious Objector (SSS Form No. 150).
>
> (signed) Patrick George Griffith"

Defendant's Exhibit 3, page 8. However, the local board did not send to the defendant Form 150 for the formal filing of his conscientious objector claim. On July 15, 1963, the local board classi-

fied the defendant 1–A without consideration of his conscientious objector claim. Defendant's Exhibit 3, page 8.

Thereafter the local board sent the defendant several current information questionnaires (SSS Form 127). On November 1, 1963, the defendant indicated that his hobbies included an "Israelite Bible Class."[1] Defendant's Exhibit 4, page 2. On a similar form returned to the local board on May 16, 1966, the defendant stated that he was "studying hebrew" [sic] and "writing little hebrew" [sic]. Defendant's Exhibit 9, page 2.

The defendant was processed for a pre-induction physical examination on January 3, 1964, but he was rejected on the grounds of "limited trainability." Subsequently, he was determined acceptable for service following the revision of the Army Mental Standards. Defendant's Exhibit 24. On April 28, 1967, the local board issued an order directing the defendant to report for induction on May 17, 1967. On May 12, 1967, the defendant requested in writing that the local board send him a conscientious objector form "as soon as possible." Defendant's Exhibit 15. The local board sent the form, and the defendant returned it on May 16, 1967. Defendant's Exhibit 20. The local board then requested authority from the State Director of Selective Service to postpone the defendant's induction until his file and SSS Form 150 (conscientious objector claim) could be reviewed. Defendant's Exhibit 16. As a consequence, the defendant's order to report was postponed "until further notice." Defendant's Exhibit 22. Two days after the defendant submitted his SSS Form 150, he sent the local board his membership card in the A-Beta Israel Hebrew Center, a black Israelite sect.

During the review of the defendant's file on June 5, 1967, the local board noted that it had failed to send the defendant a conscientious objector claim form in accordance with his request of July 12, 1963. The appropriate form was sent to the defendant *after* he had received the induction order issued on April 28, 1967. The local board thereafter reported to the State Director of the Selective Service that

"[t]here is nothing in this form which warrants change of classification, however, in view of the oversight in 1963, we are concerned with possibility of technicality being raised by registrant upon appeal. We feel registrant status, i. e., induction should be firm, but would like a ruling from you."

Defendant's Exhibit 23. The State Director then authorized the local board to cancel the defendant's induction order, which it did on July 10, 1967. Defendant's Exhibits 3, page 8; 28. *On the same day the defendant's classification was reopened, he was again classified 1–A.* Defendant's Exhibit 3, page 8. *The record does not indicate that the local board considered any evidence other than the defendant's SSS Form 150 as a basis for its decision.* The defendant was then sent notice of his right to a personal appearance and appeal (SSS Form 217). The defendant's responsive letter to the Government appeal agent, in the form of biblical quotations, was treated as an appeal. Defendant's Exhibits 30; 32; 33. On November 20, 1967, the Appeal Board affirmed the defendant's 1–A classification. Defendant's Exhibit 36. The defendant was ordered to report for induction on January 31, 1968; he reported on that day, but he refused to submit for induction. Exhibits 3, page 9; 43; 44; 45; 48. On February 1, 1968, the United States Attorney was informed of the defendant's refusal to submit to induction. Defendant's Exhibit 47. Two years elapsed before the defendant was indicted by the January 1970 Grand Jury.

■ On its face, the defendant's SSS Form 150 states a *prima facie* conscien-

---

1. In his initial questionnaire, the defendant listed his hobbies to include bible reading and ancient history.

tious objector claim. In describing the nature of his beliefs, the defendant stated:

> "I know there is a supreme being, that God gave Moses laws and commandments on Mount Zion that thou shall not kill."

Exhibit 20, page 1. The defendant further stated that his beliefs originated six years earlier when he met his friend Joshua Israel from the A-Beta Hebrew Center who taught him "who God is" and who His people the "so-called Negro" are. He also indicated that he was a member of a Black Israelite sect, the A-Beta Hebrew Center, where he pursued his biblical studies. As the creed, or doctrine, of the Hebrews with respect to participation in war, the defendant quoted certain biblical passages condemning killing. While the defendant's conscientious objector claim was not couched in the language of an educated or sophisticated man, nevertheless it is clear from the face of his SSS Form 150 that he claimed conscientious opposition to participation in war in any form [50 U.S.C. App. § 456(j)], and that his beliefs occupied in his life "a place parallel to that filled by the God of those admittedly qualifying for the exemption." United States v. Seeger, 380 U.S. 163, 176, 85 S.Ct. 850, 859, 13 L.Ed.2d 733 (1965). Moreover, the defendant's conscientious objector claim appeared on its face to "stem from [his] moral, ethical or religious beliefs about what is right and wrong" and he held those beliefs with the strength of traditional religious convictions. Welsh v. United States, 398 U.S. 333, 340, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). Cf., United States v. Rink, 430 F.2d 647 (7th Cir. 1970); United States ex rel. Conrad v. Hoffman et al., 435 F.2d 1273 (7th Cir., December 28, 1970). Both the substance and style of the defendant's expression of his beliefs is similar to that of the defendant in United States v. Joyce, 437 F.2d 740 (7th Cir. 1971). There, the United States Court of Appeals for this Circuit found that a *prima facie* conscientious objector claim was stated by a member of the same religious group to which this defendant belongs and, further, that the local and appeal boards had a duty to express a lawfully cognizable basis in fact for denying the registrant classification as a conscientious objector. The duty of selective service boards in this regard is "to decide whether the beliefs professed by a registrant are sincerely held and whether they are, in his own scheme of things, religious." United States v. Seeger, *supra*, 380 U.S. at 185, 85 S.Ct. at 863. As the Court of Appeals observed in United States v. Joyce, *supra*:

> "This principle is critically important in the case of an inarticulate registrant who lacks sophistication or a cultivated intellect, or whose beliefs derive from profound personal insights or are inspired by the teachings of an unstructured or unorthodox sect. Cf., Caverly v. United States, 429 F.2d 92, 94 (8th Cir. 1970)."

In summarily rejecting this defendant's conscientious objector claim, the local and appeal boards did not state *any* factual basis or reason for their decision that he was to be retained in the 1–A classification. In short, there is nothing in the defendant's Selective Service file from which this court is able to determine whether the classification in issue was properly supported by a basis in fact. It necessarily follows that since neither the local nor appeal boards stated any basis for their decisions, this court cannot objectively determine whether the defendant was lawfully denied conscientious objector status. In resisting this motion to dismiss the indictment, the Government has ignored the unequivocal directive of the United States Court of Appeals for this Circuit in United States v. Lemmens, 430 F.2d 619 (7th Cir. 1970), by asking this court to speculate from a silent record whether or not the local board had a legally cognizable basis in fact for refusing to classify the defendant as a conscientious objector. This court therefore concludes that the induction order in issue is invalid as a matter of

law, and the Government may not pursue this prosecution. United States v. Lemmens, *supra*, at 624; United States v. Velen, 437 F.2d 763 (7th Cir. 1971); United States ex rel. Hemes v. McNulty, 432 F.2d 1182, 1184–1185 (7th Cir. 1970); United States v. Haughton, 413 F.2d 736, 742–743 (9th Cir. 1969); United States v. Broyles, 423 F.2d 1299, 1304 (4th Cir. 1970); United States v. Washington, 392 F.2d 37, 39 (6th Cir. 1968); United States ex rel. Morton v. McBee, 310 F.Supp. 328, 331 (N.D.Ill. 1970); United States v. Prince, 310 F.Supp. 1161, 1166 (D.Me.1970).

It is therefore ordered that the indictment·be, and it is hereby dismissed.