**Sammy SALAMY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 9026.**

United States Court of Appeals Tenth Circuit.

June 21, 1967.

Hayden C. Covington, New York City, for appellant.

David A. Kline, First Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., on the brief), for appellee.

Before BREITENSTEIN and HILL, Circuit Judges, and BROWN, District Judge.

WESLEY E. BROWN, District Judge.

This is an appeal from a conviction for refusal to submit to induction into the armed forces, in violation of the Universal Military Training and Service Act, 50 U.S.C.App. § 462. The sole question is whether there is basis in fact for appellant Salamy's I-A classification pursuant to which he was ordered to report for induction.

On May 3, 1962, Salamy first filed his classification questionnaire with his local board in Oklahoma City, Oklahoma, indicating he was a part-time salesman and a full-time college student. He wrote "does not apply" in the blank provided for conscientious objector claims. On June 21, 1962, he was classified I-A. After physical examination, a statement of acceptability was issued December 13, 1963. December 23, he requested a dependency deferment, based on his father's ill health and his parents' dependency on him. The family doctor wrote the board that registrant's father was 70 years old, suffered from various disabling ailments, and depended on his son for financial and moral support. Salamy completed and returned a dependency questionnaire (SSS Form 118) which disclosed that he was unmarried and contributed $40 monthly to his mother's support. He appeared before the board February 20, 1964, which reopened his classification but left it unchanged.[1]

On March 24, 1964, he first requested a conscientious objector form, and he returned a completed SSS Form 150 to the board April 10. On April 24, the board again reopened his classification, but left it I-A. After a personal interview on May 7, the board denied his conscientious objector claim.[2] Salamy

1. The clerk's summary of the interview states in part:

"From the interview it was determined by the local board that no hardship because of financial reasons would be caused. The registrant was mostly concerned about his father being a great worrier and what this would cause to his health. He further stated that he run [sic] errands for his parents.

"The local board determined that sufficient information in writing or oral had not been presented to warrant a deferment for this registrant. His classification was re-opened and left in Class I-A."

2. The clerk's summary of this interview states in pertinent part:

"[After reciting that the registrant stated his reasons for belonging to the Jehovah's Witness church, described his religious beliefs and objections to military service, and read from the scriptures * * *] The board, having considered all the information on file and the information presented by the registrant in person, determined the registrant was correctly classified and that his classification should not be reopened. The local boards [sic] decision, to some extent, was based on this registrants background prior to the time he filed the Special Form for Conscientious Objectors with the local board."

appealed. After investigation and an appearance before the hearing officer, the Department of Justice recommended that his conscientious objector claim be denied, on the ground that he had failed to sustain his burden of proof. The Appeal Board sustained the I-A classification. Salamy sought to appeal that decision, but was advised that no appeal could be had from a unanimous decision of the Board.

He was ordered to report for induction on November 18, 1965; he appeared as directed but on November 19, he refused to be inducted. After indictment, he waived a jury trial. He was found guilty by the court, and sentenced to five years imprisonment.

■ Salamy urges that his I-A classification is arbitrary, capricious, and without basis in fact, and therefore does not support the induction order. It is true that an invalid classification may be raised as a defense to a prosecution for failure or refusal to submit to induction. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). Judicial review of a registrant's classification is limited to a determination of whether there is any factual basis in the evidence for the classification. See Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Carlson v. United States, 364 F.2d 914 (10th Cir. 1966); Fleming v. United States, 344 F.2d 912 (10th Cir. 1965). We neither weigh the evidence to determine if the classification is justified, nor look for substantial evidence to support it. Nor do we sit as a super draft board, substituting our judgment on the weight of the evidence for that of the designated agencies. Witmer v. United States, supra; United States v. Capson, 347 F.2d 959 (CA 10 1965). The classification can be overturned only if it has had no

basis in fact, for in that instance, the local board has not had jurisdiction of the potential inductee. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

The trial court found basis in fact for the I-A classification in that Salamy waited until he had been found physically acceptable, his request for another deferment had been denied, and military service had become imminent before seeking a conscientious objector's classification.[3]

■ The record discloses and the trial court found in determining sincerity and good faith, the appeal board could and did consider all pertinent circumstances, including Salamy's original disclaimer of conscientious objector status, his first request for deferment on hardship grounds, his late religious claim, asserted when military service became imminent, and his appearance and demeanor.

■■ Salamy contends that there is nothing in his file which contradicts his claim to a conscientious objector exemption, and that therefore, the board could not lawfully do otherwise than so classify him. It is settled, of course, that exemptions from military service are matters of legislative grace, and that a registrant claiming exemption has the burden of establishing his right thereto. Fleming v. United States, 344 F.2d 912 (10th Cir. 1965).

In Witmer v. United States, supra, the defendant argued, as here, that his I-A classification was invalid, because there was no specific evidence incompatible with his conscientious objector exemption. The Court rejected the argument:

"Petitioner argues from this that there was no specific evidence here incompatible with his claimed consci-

---

3. "This [finding of guilty beyond a reasonable doubt] is based on a finding and conclusion by the Court, that a basis in fact, existed in the determination of the I-A classification made by the appeal board, in that the defendant waited until after he had been found to be physically acceptable for induction after his requests for deferment had been denied and when military service became imminent to apply his claim to being conscientious objector." [R-25]

entious objector status. But in Dickinson the registrant made out his prima facie case by means of objective facts—he was a 'regular or duly ordained minister of religion.' Here the registrant cannot make out a prima facie case from objective facts alone, because the ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form. In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. In [these] * * * cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant." 348 U.S. at 381, 75 S.Ct. at 395, 99 L.Ed. at 434.

■ A prima facie case of the registrant's sincerity is not made merely by a statement of his beliefs, without more, for his earnestness may be called in question, as here, by the very untimeliness of their assertion. Ten days after being found physically acceptable, he applied for a hardship deferment.[4] Salamy completed the appropriate questionnaire and appeared before the local board for an interview February 20, 1964, all without even mentioning his religious scruples concerning military service, although he had been baptized into the Jehovah's Witness church the preceding year, on September 5, 1963. Approximately one month after denial of the hardship deferment, he first applied for a conscientious objector exemption. As the trial court recognized, the appeal board could properly consider this chronology as bearing upon his sincerity.

■ Salamy argues, further, that the Department of Justice recommendation instructed the appeal board to apply a false standard to determine his sincerity. The legal principles of the recommendation are set forth in the margin.[5]

He states that a false standard was applied, in that the Department relied solely on the late filing of his claim, whereas it appeared from the file that he came to his objections as a result of natural and gradual growth of training and belief. Certainly, sudden emergence of fully matured religious objections to military service, so soon after a deferment has been denied on an entirely unrelated ground, is a critical factor to consider in evaluating a registrant's sincerity. This is particularly so where, only a month before asserting his claim, Salamy had appeared before the board personally and made no reference whatever to any pertinent religious scruples.

■ In his brief, Salamy argues that the Justice Department falsely stated a material fact in its recommendation, concerning an attempt by him to volunteer for military service in March, 1964, the same month he first made a conscientious objector claim. The trial court found that this information could be considered by the appeal board, and regarded it as additional basis in fact for the classification. This contention was abandoned on oral argument, but without such fact, we consider the board's order allowable under the law and not arbitrarily taken.

The conviction is affirmed.

---

4. The hardship-dependency classification applies only to those registrants "whose induction into the armed forces would result in extreme hardship" to any of several enumerated dependents. 32 C.F.R. § 1622.30(b).

5. Conscientious objection seems not to have been thought of by the registrant until military service became imminent. Campbell v. United States, 4 Cir., 221 F.2d 454. Sudden accessions of belief may be utterly sincere, as the memorable one on the Damascus Road, but they seldom synchronize so perfectly with external facts making them convenient. United States v. Corliss, 2 Cir., 280 F.2d 808, cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105. The burden is not upon the Government, but on the registrant claiming exemption to bring himself clearly within the excepted class claiming conscientious objection. [Citation omitted.]