UNITED STATES of America,
Plaintiff-Appellee,

v.

Bradley Robert **WILLSON**, Defendant-
Appellant.

No. 71–1729.

United States Court of Appeals,
Ninth Circuit.

Dec. 2, 1971.

Richard B. Weinstein (argued), of
Golden & Weinstein, San Francisco, Cal.,
for defendant-appellant.

Fredric F. Tilton (argued), Paul J.
Fitzpatrick, Asst. U. S. Atty., San Fran-
cisco, Cal., for plaintiff-appellee.

Before WEICK,* BROWNING and WRIGHT, Circuit Judges.

WEICK, Circuit Judge:

Appellant Willson has appealed to this Court from a judgment of conviction in the District Court (where he waived a jury and was tried by the Court) for wilfully refusing to submit to induction in the Armed Forces. 50 U.S.C.App. § 462.

On appeal his principal contention is that there was no basis in fact for the denial by the local board of a I–O classification, and his classification in I–A.

Willson registered for the draft on March 23, 1964, with Local Board 95, in Los Angeles.

In his Classification Questionnaire, which he filed with the local board on April 28, 1964, there is a provision on page 4 to be filled out and signed only by conscientious objectors, which reads as follows:

> "Series VIII—Conscientious Objector (Do Not Sign This Series Unless You Claim To Be A Conscientious Objector.) I claim to be a conscientious objector by reason of my religious training and belief and therefore request the local board to furnish me a Special Form for Conscientious Objector (SSS Form No. 150).
>
> _____
> Signature"

Willson did not sign the place indicated on the form for his signature in order to claim to be a conscientious objector.

Willson enrolled as a student in San Jose State College in September, 1964, and expected to graduate in 1968. His local board classified him in II–S in November, 1964. Later, on September 25, 1966, he was classified I–A, but after a personal appearance before the local board he was reclassified II–S. He remained in that classification until March 5, 1968, when he was classified I–A. He appealed, but the Appeal Board retained

him in I–A. Shortly thereafter Willson requested SSS Form 150, filled it out and filed it with the local board, which classified him in I–A. He requested and was granted a personal appearance before the local board, which again classified him in I–A. The Appeal Board classified him in I–A.

Willson was ordered to report for induction on March 24, 1970, but refused to submit.

In his brief, appellant quotes from an attachment to his Form 150 to substantiate his claim to conscientious objection:

> "While I am willing, indeed eager, to perform any kind of non-violent civilian work in the service of my country, my beliefs would not permit me to be a part of any militant or violent institution such as the armed services.
>
> . . . . . .
>
> "My life must now be a life of peace and tolerance, as I remain with the faith that there is a Supreme power which guides me to continually seek the love, trust, and sensitivity that I know is within me and all men."
>
> "Pre-meditated or practiced, violent, physical force, out of malice, or as a means of solving a political, economical, moral, social, or emotional dispute, is totally incomprehensible to me in light of my religious belief and moral convictions."

The local board gave the following reasons for its denial of appellant's conscientious objector classification:

> "The Board asked if he would have served in World War II. Registrant answered he is against this war [presumably Vietnam], but he is not sure that he would have been with W.W. II, but he doubts that he would have been in favor of it either, or other wars.
>
> "The Board asked registrant if he feels he is compelled not to help in any way with the war effort. Regis-

---

* Honorable Paul C. Weick, Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

trant said he pays his taxes. He was asked if he would defend himself if attacked. Registrant said he would. The Board asked registrant if he would go to work in a non-military capacity as a civilian in a defense plant, making planes for the war. Registrant answered that as a civilian, he would be willing. The Board told registrant they would discuss his case further and he will be notified.

. . . . . .

"After consideration of the testimony given by the registrant to support his claim as a conscientious objector, there was unanimous doubt as to registrant's sincerity of his statements, along with insufficient evidence to support his request. The evidence shows that he is willing to participate in the war effort such as making planes as a civilian, but unwilling to to [sic] into war."

Several things stand out in the registrant's answers to questions by the board. His statement that he was against the Vietnam war, but not sure about World War II; at least he equivocated. He would defend himself if attacked; he was willing to work in a defense plant making planes for the war.

The District Judge did not overlook Willson's equivocal answer to the local board's question. In a colloquy with counsel for appellant, the following occurred:

"The Court: So then the point is that he answered some other things here. Look at the top of page 125 on the second page. They asked him about World War II and what his attitude was which—and that might indicate that he wasn't opposed to all wars but only opposed to this war, and—

"Mr. Weinstein: Well, let me—

"The Court: All right.

"Mr. Weinstein: Registrant answered he is against this war but he is not sure that he would have been with World War II but he doubts that he would have been in favor of either or other wars.

"The Court: Yes.

"Mr. Weinstein: Well, that statement, from the registrant, his answer on that is—

"The Court: Don't you think a man as a conscientious objector is opposed to all war; he wouldn't equivocate as this young man did?

"Mr. Weinstein: No.

"The Court: Well, you made your argument. This is the facts and you're stuck with it, so it's all right.

"Mr. Weinstein: I'm satisfied I'm stuck with it. It's a matter of interpretation, Your Honor.

"The Court: I'm taking a different interpretation than you are."

With respect to whether the reasons given by the local board were sufficiently specific, the District Judge stated:

"The Court: . . . There is only one problem that has concerned me all along and that is that the statement of the board might have been more specific in setting forth the reasons, but the board's statement is not inconsistent with its findings. In other words, there is no portion of this statement which is inconsistent with other portions of the statement as there were in some of the other cases that were referred to, and I can't believe that the Courts are going to require the local board to set down in such detail their findings that they would satisfy the requirements of a Court or an Appellate Court in a review of a trial court's decision in an opinion where facts are, findings of fact and conclusions of law are made. If that's going to be the requirement, then it would be very difficult to state any ruling of either a local board or an appellate board. No, I think that while this point is not absolutely free from doubt, there is ample basis for the local board to have done what they—what it did . . .."

The District Judge, sitting by designation, had written the opinion for this Court in United States v. Haughton, 413

F.2d 736 (9th Cir. 1969). In that case the judgment of conviction was reversed because the board did not state the basis for its decision. *Id.* at 743. Here, as found by the District Judge, the board did state the basis.

■ To require local boards, which consist largely of laymen, to do more than that which was done here and to adopt findings of fact and conclusions of law for each classification or reclassification would place an intolerable burden on them in the large number of classifications which they handle each year. There is nothing in the statute nor in the regulations imposing any such duty on local boards.

■ There must be basis in fact for the classification of the local board. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

In order to be entitled to a I–O classification, the registrant must be opposed to all wars, not merely the Vietnam war. 50 U.S.C. App. § 456(j); Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955).

■ The Supreme Court has made it clear that the scope of review by the federal courts of classifications by local boards is very narrow; that the courts are not to act as super draft boards, nor are they to search the records to determine whether the classifications are supported by substantial evidence. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

■ The ultimate question in conscientious objector cases is the sincerity of the registrant in objecting on religious grounds to participation in war in any form. Any fact which casts doubt on the veracity of the registrant is relevant. However, there must be some inference of insincerity or bad faith in order to deny the classification where the other elements have been met. Witmer v. United States, *supra.*

■ The fact that the registrant was willing to work in a plant which engaged in the production of war materi-

als is not irrelevant and may be considered although of itself it may not be conclusive. Kaline v. United States, 235 F.2d 54 (9th Cir. 1956); White v. United States, 215 F.2d 782 (9th Cir. 1954), cert. denied, 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755 (1955).

■ In our opinion, based on the evidence hereinbefore detailed, there was basis in fact for the denial of I–O classification of appellant and for his classification in I–A.

United States v. Andersen, 447 F.2d 1063 (9th Cir. 1971) may be distinguished because in that case there was no objective evidence of insincerity on the part of registrant, and there were no competent facts from which an inference of insincerity could be drawn. The only reason that the board doubted Andersen's sincerity was the lateness in his making claim as a conscientious objector. Here, as previously pointed out, other evidence of insincerity existed.

Willson next argues that he was entitled to a I–A–O classification notwithstanding the fact that he told the board that he did not want it. He relies on Franks v. United States, 216 F.2d 266 (9th Cir. 1954). *Franks* is inapposite because: "There is no suggestion that the board doubted his sincerity . . . ." *Id.,* at 269. Here, the board did doubt Willson's sincerity, and for sufficient reasons.

■ Appellant contends further that the local board should have classified him in II–S in the spring of 1968, since he was then enrolled for the spring quarter at the University of Santa Clara. He had "flunked out" at San Jose in 1967; he returned there and then withdrew. When he last appeared before the local board on February 4, 1969, he was working in San Jose. The trouble is that appellant did not comply with applicable regulations to prove that he was satisfactorily pursuing a full time course of study at Santa Clara.

Other questions have been raised which we have considered, but which do not merit discussion.

Affirmed.